IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**THOMAS SIDES**                                                    **PLAINTIFF**

**VS.**                         **CIVIL ACTION NO. 4:10cv45-LRA**

**DR. ROLANDO ABANGDON**                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Thomas Sides, *pro se,* [hereinafter "Plaintiff"] and Attorney Lee Thaggard, counsel for Dr. Rolando Abangdon [hereinafter "Defendant"], appeared on September 13, 2010, before the undersigned United States Magistrate Judge for an omnibus hearing. The Court scheduled this hearing for various pretrial purposes, including a *Spears* hearing. The hearing was conducted in an attempt to insure the just determination of this *pro se* prisoner litigation and to determine whether or not Plaintiff's claims were supported by a factual or legal basis. Pursuant to a Consent signed by all parties, District Judge Tom S. Lee entered an Order assigning this cause to the undersigned United States Magistrate Judge for all further proceedings.

**I.**      **Facts & Procedural History[1]**

Sides has been incarcerated in the custody of the Mississippi Department of Corrections ["MDOC"] at the East Mississippi Correctional Facility ["EMCF"] in Meridian, Mississippi, since October 2009. He is 63 years old and has been disabled since he was 55. Prior to his incarceration, he underwent heart surgery and three cancer surgeries. He suffers from degenerative bone disease and has five herniated discs in his back. He has muscle spasms, and walking is extremely difficult for him. He is in constant pain.

---

[1]The facts are taken from Plaintiff's complaint, and his sworn testimony, and are presented in the light most favorable to Plaintiff.

When Plaintiff arrived at EMCF, he told Defendant Dr. Abangdon about the medications he had previously taken in the free world, including Loratab (a narcotic) and muscle relaxers.  Defendant told him that he could not prescribe these medications.  Instead, he is only given Ibuprophen, Tylenol, and Aleve, both in the morning and at night.  He has also been treated by the psychiatrist at EMCF and is prescribed Zoloft; this has helped his anxiety.  Defendant Dr. Abangdon also prescribed exercise for him and directed that he sleep on a double mat.  He has received the double mat and is allowed to exercise.

Plaintiff testified that he has asked Dr. Abangdon to have x-rays taken; he was told they "wouldn't do any good."  He also requested cortisone shots, but Dr. Abangdon refused to prescribe those.

Plaintiff filed a complaint through the prison administrative remedy program [ARP] regarding his medical care.  Sandra Atwood, medical director, responded to his complaint in the First Step Response Form,[2] on February 3, 2010, as follows:

> When you came here your medical care became the responsibility of Dr. Abangan.  As a former neurosurgeon he has vast experience in diagnosis of nerve and joint problems.  Because this is a prison we do not give narcotics or mood altering drugs for pain.  The use of or non-use of narcotics does not make herniated discs or degenerative bones worse.  Exercise, a double mattress, and analgesics assist with the ability to tolerate the problem.  You have chronic problems that are not going to get better.  It is up to you to exercise and do what you are instructed to do.

Plaintiff testified that he is able to be treated or seen by Dr. Abangdon when he requests medical care; he disagrees with Dr. Abangdon's method of treating him.  He wants to be prescribed narcotics, or to be treated with cortisone shots, or to receive some kind of treatment which will relieve his excruciating pain.  Plaintiff charges that Dr. Abangdon is deliberately indifferent to his severe pain.

---

[2]ECF No. 1, p. 6.

**II**.     **Standard**

The Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2) (as amended), applies to prisoner proceedings *in forma pauperis* and provides that "the court shall dismiss the case at any time if the court determines that . . .(B) the action or appeal -- (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A plaintiff's claim shall be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998). Since Plaintiff was granted *in forma pauperis* status, Section 1915(e)(2) applies to his case.

**III.**     **Analysis**

    **A.**     **Medical Care**

Plaintiff complains that the medical care he has received from Defendant Dr. Abangdon has been constitutionally inadequate. Deliberate indifference to a prisoner's serious medical needs is an actionable Eighth Amendment violation under §1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976). The standard for finding "deliberate indifference is a subjective inquiry." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The conduct must result in "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1997). Plaintiff must show that Defendant Dr. Abangdon was actually aware of a risk of harm to him, yet consciously disregarded or ignored it. *Id.*

In *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), the Court of Appeals for the Fifth Circuit summarized the case law regarding the standard of "deliberate indifference" to the medical concerns of prisoners in part as follows:

> ... A prison official acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it." Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's

3

> disagreement with his medical treatment, absent exceptional circumstances.  "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'"  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  "Deliberate indifference 'is an extremely high standard to meet.'"

*Id.* at 346 (citations and footnotes omitted).

A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2010); *Norton v. Dimaza,* 122 F.3d 286, 292 (5th Cir. 1997).

The Court is certainly sympathetic to Plaintiff's circumstances and does not doubt that he has accurately described the facts in this case.  However, the law does not provide a remedy under these facts.  As stated by the Court in *Gobert*, the decision as to whether to provide additional treatment for a condition is one of medical judgment.  *Id.*   Dr. Abangdon has prescribed the treatment which he believes is adequate for Plaintiff's condition; this Court cannot substitute its judgment for his.³  He has not refused to treat Plaintiff, or ignored his complaints, or intentionally treated Plaintiff incorrectly.  It is not enough if Plaintiff could show Dr. Abangdon was *negligent* in refusing to give him different treatment.  This is a case wherein Plaintiff *disagrees* with the treatment he has

---

³*See Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981) ("In balancing the needs of the prisoner against the burden on the penal system, the district court should be mindful that the essential test is one of medical necessity and not one simply of desirability.")

been prescribed.[4]  At most Plaintiff could show medical malpractice or negligence; these types of cases do not rise to the level of constitutional violations.[5]

Plaintiff concedes he has been seen by a medical professional when he requests medical care.  This treatment prevents any finding that he has been mistreated or neglected by Defendant Dr. Abangdon or that Dr. Abangdon acted with subjective deliberate indifference to his serious medical needs.  As quoted above from *Gobert*, "deliberate indifference" is an extremely high standard to meet, and a prisoner's disagreement with his medical care does not ordinarily meet that standard.

In the opinion of the Court, a prison has a legitimate interest in limiting the use of narcotics by prisoners.[6]  Substance abuse exists in prisons, as well as the free world, and it is understandable that prison physicians are hesitant to prescribe powerful addictive drugs to prisoners except in critical situations.  Plaintiff may not have received the optimal treatment from a medical standpoint, but his pain has been treated.  His actual medical condition will not worsen if he is not provided narcotics or muscle relaxers or x-rays.  He has not been placed at "risk of serious harm" due to the treatment Dr. Abangdon provides.  He may experience more pain with Dr. Abangdon's conservative treatment, but his condition will not deteriorate if he receives no other pain treatment.  The *Gobert* standard simply cannot be met in this case, and the Court has no option but to dismiss Plaintiff's complaint.

---

[4]*See Norton,* 122 F.3d at 292 (affirming dismissal of suit as frivolous where prisoner claimed medical personnel should have tried different methods of diagnosis and treatment).

[5]*See Street v. Corrections Corp. of America*, 102 F.3d 810, 816 n. 13 (6th Cir. 1996) (patient's disagreement with his physicians over the proper medical treatment alleges nothing more than a medical malpractice claim, and is not cognizable as a constitutional claim.)

[6]Indeed, the First Step Response indicates that EMCF has an official policy against prescribing narcotics.  The validity of that policy is not before the Court.

### B.     Exhaustion of Administrative Remedies

Plaintiff has attached his First Step Response to his complaint, but he has not shown that he exhausted the ARP program by following through to the Third Step. He does not attach a Certificate of Completion. Even if a constitutional claim had been set forth, the Court could not enter a Judgment in his favor unless he had completed the ARP process by appealing through the Third Step.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e, contains an "'invigorated' exhaustion provision, § 1997e(a)." *Woodford, et al. v. Ngo*, 548 U.S. 81, 84, (2006) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, until such administrative remedies as are available are exhausted.
> 42 U.S.C. § 1997e(a) (1995).

The PLRA requires a prisoner to "exhaust all 'available' remedies, not just those that meet federal standards. . . [A]s [the Supreme Court] held in *Booth*, a prisoner must now exhaust all administrative remedies even where the relief sought - monetary damages - cannot be granted by the administrative process." *Woodford*, at 85 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, at 85 (citing *Booth*, at 739). Exhaustion is "required for any suit challenging prison conditions, not just for suits under § 1983." *Woodford*, at 85 (citing *Porter v. Nussle*, at 524).

In *Woodford*, the Supreme Court found that the PLRA's exhaustion requirement means "proper" exhaustion, which requires a prisoner to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, at 88, 93.

MDOC would have provided Plaintiff with a Certificate of Completion if Plaintiff **properly** complied with the provisions of the ARP program. This Court will not monitor

his compliance or non-compliance with ARP or the program's diligence or effectiveness: the certificate is mandatory prior to filing suit in this Court. It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The Court finds that Plaintiff's failure to exhaust his ARP remedies is an alternative grounds for dismissal.

## IV.     Conclusion

The Court finds that the facts asserted by the Plaintiff do not state a claim upon which relief may be granted and, therefore, the Complaint must be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii). Plaintiff has also failed to exhaust his remedies under ARP. The Court has accepted Plaintiff's testimony and allegations as true but finds that Defendant is not liable to Plaintiff under these circumstances.

IT IS, THEREFORE, ORDERED that Plaintiff's Complaint is dismissed with prejudice, and Final Judgment in favor of Defendant Dr. Abangdon shall be entered.

SO ORDERED, this the 2nd day of November, 2010.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE